UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL HESTER, )<br>    *Plaintiff*, )<br>)<br>   *vs*. )<br>)<br>INDIANA STATE DEPARTMENT OF HEALTH, )<br>    *Defendant*. ) | 1:10-cv-1570-JMS-DML |

## ORDER

Presently pending before the Court in this employment discrimination suit is Defendant Indiana State Department of Health's ("ISDH") Motion for Summary Judgment, [dkt. 40], which the Court grants for the reasons that follow.

### I.
### BACKGROUND

Paul Hester, who is Caucasian and 56 years old, began working for ISDH as a microbiologist in the immunology laboratory in 1994. [Dkt. 40-1 at 3-4.] In 2007, Mr. Hester received a written reprimand after certain test results were not timely submitted to the College of American Pathology. [*Id.* at 8, 23-24.] Mr. Hester disagreed with the reprimand, stating that he provided the results to his supervisor in a timely manner and that his supervisor was then responsible for submitting the results to the College of American Pathology. [*Id.* at 9.]

Also in 2007, Mr. Hester applied for the position of Bench Supervisor. [*Id.* at 5.] Lixia Liu conducted the interview process, ultimately hiring Rich Dufour for the position. [*Id.*] Mr. Dufour then became Mr. Hester's supervisor. [*Id.* at 6.] In September 2008, Mr. Hester discussed with Mr. Dufour what he perceived to be a deviation by ISDH from the appropriate standard operating procedure for administering syphilis tests. [*Id.* at 6-7.] Specifically, Mr. Hester believed that ISDH was not – but should have been – using a "moistened chamber" when

- 1 -

conducting the tests. [*Id.*] Mr. Hester told Mr. Dufour of his concerns, but never heard anything further regarding the issue from Mr. Dufour. [*Id.* at 7.]

In December 2008, Mr. Hester again applied for the Bench Supervisor position after Mr. Dufour left ISDH. [*Id.* at 6.] Ms. Liu interviewed him, but the position was given to Jessica Gentry. [*Id.*] Ms. Gentry is Caucasian, approximately in her mid-20s, and had been working for ISDH in the immunology lab for about four years at the time of her promotion. [*Id.*]

In April 2009, Mr. Hester met with Ms. Liu regarding his performance appraisal for the period February 2008 to December 2008. [*Id.* at 11.] At the meeting, Mr. Hester received a Work Improvement Plan, which required him to "gain competency" – or pass a proficiency test with 100% accuracy – in both syphilis testing and Ortho ECI (Hepatitis B and HIV) testing within thirty days. [*Id.* at 12.]

In May 2009, Mr. Hester took and passed his proficiency test for conducting syphilis tests, [*id.* at 12; 43-1 at 2], and then took the Ortho ECI proficiency test, [dkt. 43-1 at 2]. Shortly thereafter, Ms. Gentry (Mr. Hester's supervisor at the time) suggested to Mr. Hester that he had inaccurately tested one sample on the Ortho ECI proficiency test. [Dkts. 40-2 at 3; 43-1 at 3.] Mr. Hester claims that, in response to Ms. Gentry's suggestion, he reminded her and advised Ms. Liu that one of the test samples had been switched with another sample because of poor quality, and that this switch was not reflected on the excel spreadsheet where he recorded his results. [Dkt. 40-1 at 14, 44.] Accordingly, he claimed, the test result Ms. Gentry questioned was accurate. [Dkt. 43-1 at 3-4, 18.]

When the thirty-day deadline for completing his Work Improvement Plan passed, Mr. Hester did not hear anything from Ms. Gentry or Ms. Liu regarding the Ortho ECI proficiency test until a predeprivation meeting on June 9, 2009. [Dkt. 40-1 at 13.] There, he learned for the

first time that ISDH believed he had failed the Ortho ECI proficiency test and that he would be terminated effective July 9, 2009.  [*Id.* at 14, 36.]

Mr. Hester argues that he was a merit employee and, as such, could only be terminated for "just cause."  [Dkt. 43-1 at 1.]  The State Employees' Appeals Commission ("SEAC") affirmed ISDH's decision to terminate Mr. Hester, and Mr. Hester appealed that decision to the Marion Superior Court.  *In re: Hester v. SEAC*, No. 49D14-1007-PL-032056 (Marion Superior Ct.).  On May 30, 2012, the Marion Superior Court remanded the matter to SEAC and ISDH due to:

1. Acknowledged non-compliance by SEAC with mandatory due process procedures;

2. The failure of [SEAC and ISDH] to provide [Mr. Hester] with relevant and material evidence prior to the SEAC hearing; [and]

3. Failure to prepare or preserve an adequate record.

[Dkt. 46-1.]  On June 12, 2012, the Marion Superior Court stayed enforcement of the May 30, 2012 Order pending resolution of ISDH's motion to correct error.  [Dkt. 49-3.]

Around the same time, Mr. Hester filed the instant parallel action in state court alleging claims for racial and gender discrimination under Title VII and age discrimination under the Age Discrimination and Employment Act ("ADEA").  ISDH removed the matter to this Court.  As violations of federal statutes are alleged, subject matter jurisdiction exists.

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor.  *See* Fed. R. Civ. Pro. 56.  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a

material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved for the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and re-

solve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## III.
### DISCUSSION

ISDH challenges Mr. Hester's claims in two ways. First, it asserts his claim under the ADEA is barred because ISDH is immune from suit for that claim under the doctrine of sovereign immunity. It also argues that Mr. Hester has not presented any direct or indirect evidence of discrimination in connection with his Title VII claims. As discussed below, ISDH's motion is granted.

**A.  Analyzing ADEA Claim - Applicability of Doctrine of Sovereign Immunity**

ISDH argues that the Eleventh Amendment to the United States Constitution provides it with immunity from private suit in federal court for violations of the ADEA, citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000), for the proposition that Congress' abrogation of the states' sovereign immunity in the ADEA is not a valid exercise of power. [Dkt. 41 at 6-7.] Mr. Hester briefly responds that ISDH has waived its immunity by removing this matter to federal court. [Dkt. 43 at 6.] ISDH replies by again citing *Kimel*, and arguing that "[a] state would have immunity from suit under the ADEA regardless of whether the case was filed in state or federal court based on invalid abrogation." [Dkt. 49 at 5.]

Eleventh Amendment immunity includes both immunity from suit in federal court and immunity from liability. *See Nanda v. Bd. of Trs. of the Univ. of Ill.*, 303 F.3d 817, 821 (7th Cir. 2002). While state agencies do generally enjoy immunity under the Eleventh Amendment from being sued in federal court, that immunity does not bar claims where: (1) a state has waived immunity by consenting to suit in federal court; (2) Congress has "abrogate[d] the state's immunity through a valid exercise of its powers under recognized constitutional authority"; or (3) plaintiff

seeks "prospective equitable relief for ongoing violations of federal law." *Tyler v. Trs. of Purdue Univ.*, 834 F.Supp.2d 830, 844 (N.D. Ind. 2011). Mr. Hester argues only that ISDH has waived immunity from suit because it removed this case to federal court.

The Seventh Circuit Court of Appeals has held that a state waives its Eleventh Amendment immunity from suit in federal court when it removes claims to federal court, regardless of whether those claims are based on state or federal law. *See Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.,* 653 F.3d 448, 461 (7th Cir. 2011) (noting that the Seventh Circuit "join[s] the majority of our other sister circuits in reading *Lapides [v. Bd. of Regents*, 535 U.S. 613, 122 S. Ct. 1640 (2002),] to state a more general rule" that removal of either state or federal claims operates as a waiver of sovereign immunity because removal constitutes consent to suit in federal court); *see also Lombardo v. Pennsylvania Dep't of Public Welfare*, 540 F.3d 190, 198 (3d Cir. 2008) ("We hold that the [state's] removal of federal-law claims to federal court effected a waiver of immunity from suit in federal court"); *Meyers v. Texas*, 410 F.3d 236, 244 (5th Cir. 2005) (state's removal of lawsuit to federal court waived sovereign immunity); *Embury v. King,* 361 F.3d 562, 564 (9th Cir. 2004) (holding *Lapides* applied to action removed by state to federal court based on either state or federal law); *Estes v. Wyoming Dep't of Transp.*, 302 F.3d 1200, 1206 (10th Cir. 2002) (same principle). Accordingly, the Court concludes that ISDH waived its immunity from suit in federal court by removing this action, [dkt. 1].

Albeit through scant argument, ISDH does assert that it is immune from suit under the ADEA regardless of forum. The Court recognizes there is a distinction between immunity from suit in federal court and immunity from liability. *Lombardo*, 540 F.3d at 193. A small number of courts have considered the issue of whether a state can waive its immunity from suit in federal court by removing an ADEA claim to federal court, but still retain its immunity from liability.

Those courts have held that, while removal does constitute waiver of the Eleventh Amendment right of a state to be free from suit in federal court, removal does not operate to waive any defenses to liability – immunity included – which the state could assert no matter where the lawsuit was pending. *See, e.g., Lombardo*, 540 F.3d at 198 (state removed ADEA suit to federal court so waived Eleventh Amendment immunity from suit there, but retained any sovereign immunity it had to liability); *Clemmer v. State of Florida*, 2005 U.S. Dist. LEXIS 35187, *3-4 (N.D. Fla. 2005) (state's removal of ADEA claim "waives any objection to litigation in federal rather than state court but does not waive immunity that would foreclose a claim in any court, state or federal….[C]hoosing federal rather than state court [by removing] says nothing about a state's willingness to have the action go forward at all. [The state] thus has not waived its immunity from plaintiff's ADEA claim" (emphasis in original)).

The concept of waiving immunity from suit in federal court, but not waiving immunity from liability, has been recognized in other contexts as well. *See, e.g., Meyers*, 410 F.3d at 255 (state waived immunity from suit in federal court for Americans With Disabilities Act claim, but did not waive arguments regarding immunity from liability); *Anderson v. Board of Regents*, 822 F.Supp.2d 1342, 1355 (N.D. Ga. 2011) ("[W]hen a state defendant properly removes an action to federal court, it does not lose the right it always would have had, in whatever court it might have been sued, to assert a sovereign immunity defense that potentially shields it from liability"); see also Jonathan R. Siegel, *Waivers of State Sovereign Immunity and the Ideology of the Eleventh Amendment*, 52 Duke L.J. 1167, 1233-34 (2003) ("state sovereign immunity has two independent aspects: it is partly an immunity from suit in a particular forum (federal court) and partly a substantive immunity from liability" and "removal should be understood to waive only forum immunity [i.e., immunity from suit in federal court]").

The United States Supreme Court in *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000), addressed a state's immunity from liability for ADEA claims and held that, while Congress intended for the ADEA to apply to states and their agencies, this was not a proper abrogation of a state's immunity from liability under Section 5 of the Fourteenth Amendment. *Id.* at 73. Additionally, there is no indication, nor does Mr. Hester argue, that ISDH has waived its immunity from liability under the ADEA through statute or otherwise – only that it has waived its immunity from suit in federal court for ADEA violations. [Dkt. 43 at 6.] *See Montgomery v. Bd. of Trs.*, 849 N.E.2d 1120, 1126-28 (Ind. 2006) (holding that Indiana's enactment of Indiana Age Discrimination Act did not constitute consent by state to be sued under ADEA and that states could only be sued in direct action for ADEA violation by individual for injunctive relief, or through direct enforcement by the EEOC).

Based on the foregoing, the Court finds that ISDH has not waived its immunity from liability under the ADEA. Accordingly, the Court grants ISDH's summary judgment motion on Mr. Hester's ADEA claim.

### B. Analyzing Title VII Claims

#### 1. Direct and Indirect Methods of Proof

Mr. Hester asserts racial and gender discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, [dkt. 1-1 at 2-4]. To overcome summary judgment on a Title VII claim, Mr. Hester may either provide direct evidence of discrimination, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), or show indirect evidence under the burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).

To avoid summary judgment under the direct method of proof, a plaintiff must either adduce direct evidence of discrimination or circumstantial evidence sufficient to create a "convinc-

ing mosaic of discrimination" based upon a protected factor such as race, gender, national origin, age or the plaintiff's participation in a protected activity. *Good v. University of Chicago Medical Center*, 673 F.3d 670, 674 (7th Cir. 2012). Most often, such a "mosaic" will be pieced together with circumstantial evidence that falls into one of three categories:

> (1) Suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group;
> (2) Evidence, whether or not rigorously statistical, that similarly situated employees who do not share the protected characteristic receive systematically better treatment; or
> (3) Evidence that the employee was qualified for the job in question but was passed over in favor of, or replaced by, a person outside the protected class and the employer's explanation for the same is unworthy of belief.

*Darchak v. City of Chicago Board of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009); *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). In any case where a plaintiff is relying solely on circumstantial evidence to prove discrimination using the direct method, that circumstantial evidence may not be teamed with conjecture or presumption to make the case; rather, the evidence must point directly to a discriminatory reason for the defendant's action. *Good*, 673 F.2d at 675; *Lim v. Trs. of Ind. Univ.*, 297 F.3d 575, 580 (7th Cir. 2002). This threshold is very high, particularly in certain circumstances, such as appear in the case at bar, where reverse discrimination is claimed with respect to race and gender. *Good*, 673 F.3d at 676-77.

A plaintiff may also seek to avoid summary judgment utilizing the indirect method of proof. Under the burden-shifting analysis, Mr. Hester must first establish a prima facie case of discrimination by demonstrating that (1) he was a member of a protected class, (2) he adequately performed his employment responsibilities, (3) despite adequate performance, he suffered an adverse employment action, and (4) he received different treatment than similarly situated persons who were not members of the same protected class. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007) (citation omitted). Where, like Mr. Hester here, a plaintiff is

attempting to prove reverse discrimination with regard to race or gender, the first part of the *McDonnell Douglas* template is altered and requires that the plaintiff show either that the facts at hand seem particularly dubious or that there is something in the background of the employer that would demonstrate a reason or inclination to discriminate against Caucasians or males.  *See Good*, 673 F.3d at 678; *Ballance v. City of Springfield*, 424 F.3d 614, 617-18 (7th Cir. 2005).  If Mr. Hester can make that showing, the burden shifts to ISDH to come forth with a "legitimate, non-discriminatory reason" for its actions.  *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) (citation omitted).  If ISDH can do so, it will prevail unless Mr. Hester can come forward with evidence that the proferred non-discriminatory reason is "a pretext for intentional discrimination." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011) (citation omitted).

      2. Reverse Racial Discrimination Claim - Termination

Mr. Hester claims that ISDH discriminated against him based on his race by terminating him for supposedly failing the Ortho ECI proficiency test, but not terminating another ISDH employee, Mr. Douglas.  According to Mr. Hester, Ms. Liu stated that Mr. Douglas had "serious performance competency deficiencies during his employment with ISDH…necessitate[ing] closure of the ISDH Rabies Lab."  [Dkt. 43-1 at 7.]   While it is not clear whether Mr. Hester is proceeding under the direct or indirect method of proof in connection with his race discrimination claim, either way he has not met his burden.

      *a. Direct Method*

The only evidence Mr. Hester sets forth in connection with his racial discrimination claim is that Mr. Douglas was not terminated even though he was allegedly not performing his job in the Rabies Lab competently.  Mr. Hester does not put forth any evidence – circumstantial or otherwise – that ISDH's decision to terminate him and not Mr. Douglas had anything to do with

race. Simply pointing to a member of another race who Mr. Hester perceives as being treated better than him is not enough to constitute direct proof of discrimination. *See Good*, 673 F.3d at 675 (identifying employees of another race who were treated better is not adequate direct proof of discrimination because it does not point to a discriminatory reason for the employee's decision; "[f]rom this evidence, one might guess or speculate that perhaps [the employee's] race might have made a difference in the decision, but guesswork and speculation are not enough to avoid summary judgment"). Mr. Hester has failed to present adequate direct evidence of racial discrimination.

### b. Indirect Method

In order to prove reverse racial discrimination under the indirect method of proof, Mr. Hester must first show that the facts surrounding his termination are particularly dubious, or that ISDH has a history of or inclination to discriminate against Caucasians. *Ballance*, 424 F.3d at 617-18. In *Mills v. Health Care Serv. Corp.*, 171 F.3d 450 (7th Cir. 1999), the Seventh Circuit Court of Appeals recognized that "it is the unusual employer who discriminates against majority employees." *Id.* at 456-57. Accordingly, the court found that there is a heightened examination of circumstances warranted when a member of the majority claims discrimination. *Id.* at 457. While such scrutiny in no way precludes a plaintiff with direct evidence of discrimination against the majority from bringing the claim, without an announced predisposition to favor a so-called protected class, the plaintiff must be able to adduce facts that would support such an inclination. *Id.* In *Mills*, the plaintiff met that burden by showing that, over a seven-year span at the defendant's office there was a disproportionate hiring pattern favoring females, women garnered almost all the promotions, and women came to dominate the supervisory positions at the office. *Id.* at 457-58. In another decision, the Seventh Circuit found the factual circumstances of a case

"fishy" enough to support a reverse discrimination claim where the record included a city commissioned report, which revealed that the police chief took into consideration minority race and female gender when hiring, assigning, promoting and disciplining officers. *Ballance*, 424 F.3d at 617-18.

The Court does not find ISDH's decision to terminate Mr. Hester and not Mr. Douglas "particularly dubious" or "fishy" so as to demonstrate reverse discrimination. Mr. Hester sets forth very little evidence regarding the circumstances surrounding Mr. Douglas' supposed deviation from ISDH standards and subsequent retention as an ISDH employee. Further, Mr. Hester has not presented evidence of any history or circumstance that could cause a fact-finder to believe that ISDH – or Mr. Hester's superiors more particularly – tended to discriminate against Caucasians such as Mr. Hester. *See Phelan v. City of Chicago*, 347 F.3d 679, 685 (7th Cir. 2003) (no indirect evidence of reverse racial discrimination where employee did not present evidence that superiors were inclined to discriminate against Caucasian men). Accordingly, Mr. Hester has not presented direct or indirect evidence of reverse racial discrimination and the Court grants ISDH's summary judgment motion as to that claim.[1]

---

[1] Even if this case were reviewed without the heightened reverse discrimination standard, Mr. Hester has not presented admissible evidence showing that Mr. Douglas is a sufficient comparator. While evidence regarding Mr. Douglas is scant, he had approximately fifty years of experience as a microbiologist at ISDH compared with Mr. Hester's fifteen years. [Dkt. 40-1 at 4, 6, 20.] Additionally, he worked in the Rabies Lab, while Mr. Hester worked in the Serology Lab. [*Id.* at 4, 20.] Mr. Hester argues that Ms. Lovchik decided to close the Rabies Lab based upon Mr. Douglas's ineptness, and also was the decision maker regarding Mr. Hester's termination. However, his assertion is supported only by his Affidavit, [dkt. 43-1], in which he "recaps" Dr. Lovchik's testimony during the SEAC hearing, [*id.* at 7]. ISDH points out that Mr. Hester cannot testify as to another individual's testimony, and could have provided that testimony but did not. [Dkt. 49 at 1-2.] The Court agrees, but even considering this testimony, it still does not show that Mr. Douglas is a sufficient comparator to Mr. Hester due to the other differences already discussed.

3. Reverse Gender Discrimination Claim – Failure To Promote

In connection with his reverse gender discrimination claim relating to his failure to be promoted to Bench Supervisor, Mr. Hester proceeds under both the direct and indirect methods of proof. [Dkt. 43 at 6.]

*a. Direct Method*

Under the direct method of proof, Mr. Hester argues that unlike him, Ms. Gentry had not demonstrated syphilis testing proficiency because she was performing the test outside of standard operating procedure, yet she still received the promotion. [Dkt. 43 at 7.] He also argues that any suggestion that he was unqualified for the Bench Supervisor position based on his alleged failure of the Ortho ECI test is "a fabricated contrivance" because he believes that he actually passed the test. [*Id.*]

Again, Mr. Hester has not set forth any direct or circumstantial evidence suggesting that ISDH's decision to promote Ms. Gentry and not him was based on their different genders. Mr. Hester has not even shown that Ms. Liu, who Mr. Hester concedes made the decision to promote Ms. Gentry, [dkt. 40-1 at 6], knew about Ms. Gentry's alleged performance of the syphilis test outside of standard operating procedure. And his reliance on any issues with his failure to pass the Ortho ECI test misses the mark. Mr. Hester took the Ortho ECI test in question *after* he was passed over for the promotion, [dkts. 40-1 at 6; 43-1 at 2]. Therefore, his alleged failure of that test could not be the reason he did not get the promotion – nor is there evidence that ISDH ever proferred that as a reason. Mr. Hester has not provided adequate direct proof in connection with his claim that ISDH failed to promote him based on his gender.

*b. Indirect Method*

In arguing that he has indirect proof of gender discrimination related to ISDH's failure to promote him, Mr. Hester identifies Ms. Gentry as a similarly-situated comparator. But, like his racial discrimination claim, Mr. Hester cannot make the initial showing that the circumstances surrounding his failure to receive the promotion were particularly dubious, or that ISDH has a history of discriminating against males. *See Phelan*, 347 F.3d at 685. Because he fails to even set forth evidence that Ms. Liu knew of Ms. Gentry's alleged performance of syphilis tests outside of standard operating procedure, and does not identify any other evidence, he has not shown that ISDH's actions were particularly dubious or "fishy," or, further, that ISDH had any history of preferring females over males. *See, e.g., Holmes v. Trs. of Purdue Univ.*, 2008 U.S. Dist. LEXIS 102624, *18 (N.D. Ind. 2008) (reverse gender discrimination claim failed where employee had not shown "any inclination of [employer] to discriminate against men" and "[t]he record [was] simply void of any so-called 'fishy facts'"). Accordingly, his reverse gender discrimination claim for failure to promote fails at the outset under both the direct and indirect methods of proof, and the Court grants ISDH's summary judgment motion as to that claim.

4. Gender Discrimination Claim – Termination

Finally, Mr. Hester claims that he was discriminated against because of his gender when he was terminated and five female employees, including Ms. Gentry, were not. [Dkt. 43 at 9-10.] He again claims he has proof of gender discrimination under both the direct and indirect methods. [*Id.*]

*a. Direct Method*

Mr. Hester relies on circumstantial evidence that five female ISDH employees administered the syphilis test outside of standard operating procedures and went "unpunished," [dkts. 43 at 9; 43-1 at 7], and that one woman – Erin Espinosa – failed the Ortho ECI test and was allowed to take it again, [dkt. 43-1 at 7]. Mr. Hester's reliance on that evidence is flawed in several respects.

The five women who Mr. Hester claims incorrectly performed the syphilis test outside of standard operating procedure and were not terminated are irrelevant to his termination claim. Mr. Hester testified that he also performed the syphilis test outside of standard operating procedure before ISDH issued a directive to begin using a "humid chamber." [Dkt. 40-1 at 7-8.] He was ultimately terminated for his alleged failure to pass the Ortho ECI proficiency test – a matter wholly unrelated to the syphilis testing issue. Accordingly, he was treated the same as the five women who also allegedly performed non-compliant syphilis tests – *i.e.*, he was not disciplined.

That leaves Mr. Hester with Ms. Espinosa – the female that he claims failed the Ortho ECI test and was permitted to re-take it rather than being terminated. The only "evidence" Mr. Hester sets forth is a statement in his Affidavit that "Erin Espinosa was provided another chance to attain Ortho ECI [testing] proficiency after she failed the competency test, by being permitted to perform a second competency test." [Dkt. 43-1 at 7.] Mr. Hester's statements in his Affidavit must be based upon personal knowledge to be admissible. *Juarez v. Menard, Inc.*, 366 F.3d 479, 484 (7th Cir. 2004) ("[A]ffidavits submitted in an attempt to thwart summary judgment must be based on personal knowledge as required by both Federal Rule of Civil Procedure 56(e)…and by Federal Rule of Evidence 602"); *Box v. A&P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir. 1985) (statements in affidavit relating to employer treating male cashiers differently than female cash-

iers not based on personal knowledge, so not sufficient to defeat summary judgment). Mr. Hester's single sentence simply stating that Ms. Espinosa was given a second chance to take and pass the Ortho ECI test, without any background regarding how he obtained that knowledge, does not satisfy the Court that his statement is based upon his personal knowledge. Due to Mr. Hester's failure to show that he has personal knowledge, and the complete lack of evidence regarding the most basic information surrounding Ms. Espinosa's alleged failure and subsequent re-take of the Ortho ECI test, such as the time frame in which the failure and re-take occurred, the Court simply cannot conclude that this indicates any discriminatory purpose on the part of ISDH.[2]

### b. Indirect Method

Given the problems discussed above with the evidence Mr. Hester sets forth under the direct method of proof, the Court cannot conclude that the circumstances surrounding his termination were "dubious" enough to support his reverse gender discrimination claim. ISDH's treatment of the five females who allegedly performed the syphilis test outside of standard operating procedure is irrelevant to how it treated Mr. Hester in connection with his performance on the Ortho ECI test. This is particularly so given that Mr. Hester was treated the same as the female employees with respect to the syphilis test. And his evidence regarding Ms. Espinosa's Ortho

---

[2] Further, the Court also cannot conclude that the five females Mr. Hester identifies as sufficient comparators – Ms. Gentry, Ms. Espinosa, Lyndsey Hensler, Veronica Erwin Oss, and Katy Masterson – are, in fact, so. As discussed, Mr. Hester does not claim that Ms. Gentry, Ms. Hensler, Ms. Oss, or Ms. Masterson failed the Ortho ECI test, which is undisputedly the reason he was terminated. Accordingly, comparing ISDH's treatment of those women and its treatment of Mr. Hester makes no sense. As to Ms. Espinosa, Mr. Hester's statements in his Affidavit regarding her alleged failure of the Ortho ECI test and subsequent re-take of the test, without more, does not show that she is a sufficient comparator. *See McGowan v. Deere & Co.*, 581 F.3d 575, 580 (7th Cir. 2009) (employee's statements in affidavit in opposition to summary judgment motion did not provide sufficient detail about proferred comparator to allow meaningful comparison). Significantly, Mr. Hester has not introduced that Ms. Espinosa was on a work improvement plan.

ECI proficiency is tenuous at best.  Further, as also noted above, Mr. Hester presents no evidence of an inclination on the part of ISDH to prefer females over males.

### c.  Pretext

Even assuming that Mr. Hester could satisfy his initial burden under the indirect method of proof for his gender discrimination claim (or race discrimination claim) related to his termination, Mr. Hester has not shown that ISDH's reasons for terminating him were pretext for discrimination.  Mr. Hester claims that his alleged failure of the Ortho ECI proficiency test was pretext because: (1) he did not actually fail the test; (2) ISDH did not follow its procedural requirements for disciplinary action; and (3) ISDH would not produce certain documents requested by Mr. Hester, including the Excel spreadsheet that Mr. Hester completed during the Ortho ECI proficiency test. [Dkt. 43 at 10.]  His assertion that ISDH acted incorrectly or even in a sinister manner, without any evidence that those actions were motivated by discrimination, are not enough to show pretext.

It is well settled that an employer can make a mistake, or even act unfairly, while still not acting in a discriminatory fashion.  As the Seventh Circuit Court of Appeals has explained, "we 'do not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination….' 'On the issue of pretext, our only concern is the honesty of the employer's explanation.'…And there is no indication in the record that [the employer] did not honestly believe [its actions were correct]." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001).  *See also Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 718 (7th Cir. 1999) (in order to show pretext, it is insufficient for employee "to show that his employer fired him for incorrect or poorly considered reasons.  He must establish that the employer did not honestly believe the reasons it gave for terminating him"); *Ptasznik v.*

*St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006) (finding insufficient evidence of pretext and stating "it is not our role to determine the competency of or interfere in employment decisions simply where we believe an employer has made a poor choice. Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair").

Much of Mr. Hester's brief in opposition to ISDH's summary judgment motion is spent discussing the Ortho ECI test, the reasons he believes he did not fail the test, and testimony from the SEAC proceeding relating to the test. [Dkt. 43 at 3-5, 7-10, 12.] Glaringly absent from Mr. Hester's brief is a discussion of any evidence showing ISDH's actions were motivated by discrimination. Mr. Hester's claims read more like wrongful termination claims, and Mr. Hester and ISDH are currently litigating the question of whether Mr. Hester's termination was proper in Mr. Hester's state court action challenging the SEAC's decision. Even if the state court were to determine that Mr. Hester in fact passed the test, and that he was wrongfully terminated, that still would not indicate that ISDH's reason for terminating him was a pretext for race or gender discrimination. *See Liner v. Dontron, Inc.*, 9 Fed. Appx. 523, 527 (7th Cir. 2001) ("[the employee] believes that a state court's determination that the deductions from her earned commission violated the Illinois Wage Payment and Collection Act…somehow demonstrates a violation of Title VII. That the deductions were not valid under state law, however, does not speak to the issue whether [the employer] honestly believed that it should deduct commissions to prevent future violations of company policy"); *O'Regan*, 246 F.3d at 984 (even if company's employment

agreement was illegal, unenforceable, and a "bad business decision," company forcing employees to sign agreement did not establish pretext).[3]

In short, while Mr. Hester may be able to raise a genuine issue of fact that ISDH was wrong in terminating him, that claim is not pending here. The evidence he has presented does not demonstrate that illegal discrimination motivated ISDH's actions. Accordingly, the Court grants ISDH's summary judgment motion on Mr. Hester's reverse gender discrimination claims relating to his termination.[4]

## IV.
### CONCLUSION

For the reasons explained herein, the Court **GRANTS** ISDH's Motion for Summary Judgment, [dkt. 40], on Mr. Hester's claims. Additionally, because the Court has not based its

---

[3] Even if ISDH did not follow its procedural requirements for disciplinary action or failed to produce certain documents related to Mr. Hester's termination, the Court finds that these allegations – without more – still would not show that ISDH's reasons for terminating him were pretextual. *See Fortier v. Ameritech Mobile Communs.*, 161 F.3d 1106, 1114 (7th Cir. 1998) (failure on the part of employer to follow own policies and procedures in connection with employee's termination was not evidence of pretext); *Doe v. First Nat'l Bank*, 865 F.2d 864, 871 (7th Cir. 1989) (same principle). Both of those issues are currently before the Marion Superior Court, and any potential liability for those actions is more properly determined in connection with Mr. Hester's suit there.

[4] Mr. Hester moves to strike portions of ISDH's reply brief, [dkt. 52], which dispute his claim that Ms. Espinosa failed the Ortho ECI test and was permitted to re-take it, and which assert that he changed his testimony regarding ISDH's alleged failure to produce the Excel spreadsheet related to his Ortho ECI test. He also asks that the Court "enter judgment in Plaintiff's favor as to liability," [dkt. 53 at 5], because ISDH has not complied with the Court's May 15, 2012 Order, [dkt. 42], granting in part and denying in part Mr. Hester's Motion To Compel, [dkt. 37]. Because the Court has construed the evidence in the light most favorable to Mr. Hester and has not based its decision on any of ISDH's arguments which Mr. Hester addressed in his Motion To Strike, and since it appears that ISDH produced some discovery in response to the Court's May 15, 2012 Order after Mr. Hester filed his Motion To Strike (and Mr. Hester does not specify what aspects of the Order ISDH is not complying with), the Court denies Mr. Hester's Motion To Strike as moot.

- 20 -

decision on any of the arguments Mr. Hester seeks to strike, his Motion To Strike, [dkt. 52], is

**DENIED AS MOOT**.  Judgment will enter accordingly.

.
08/30/2012

                                             Hon. Jane Magnus-Stinson, Judge
                                             United States District Court
                                             Southern District of Indiana

**Distribution via ECF only:**

Corinne T.W. Gilchrist
OFFICE OF THE INDIANA ATTORNEY GENERAL
corinne.gilchrist@atg.in.gov

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

James D. Masur II
ROBERT W. YORK & ASSOCIATES
jmasur@york-law.com